UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| ARTHUR L. SPEIGHTS, | : | Bankruptcy No. 08-11543DWS |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

**BY: DIANE WEISS SIGMUND, United States Bankruptcy Judge**

Before the Court is the Motion of Charter One Mortgage Corp. ("Movant") to Vacate Dismissal Order and to Annul the Automatic Stay (the "Motion") with Respect to Premises Located at 2036 North 63rd Street, Philadelphia, PA 19151 (the "Property"). After two continuances to accommodate the Debtor, an evidentiary hearing was held on May 5, 2008. For the reasons that follow, the Motion is granted.[1]

---

[1] At the initial listing on April 24, 2008, the Debtor appeared and advised the Court that he had certain hearing and speech impediments and had been seeking counsel to represent him. It soon became apparent that it was his brother Allie Speights ("Allie" a/k/a "Ah") that was in control of these proceedings. Michael Sayles, Esquire ("Sayles") appeared and stated his willingness to take the representation but Allie had not given him a retainer as he was still "shopping" for a lower fee. When Allie was advised that the hearing would go forward, he quickly retained Sayles. Movant consented to give Sayles a short continuance, and the hearing was rescheduled for May 2, 2008. On that date, Debtor failed to appear at the scheduled time. Allie was present and reported that Debtor had been to the courthouse earlier but had failed to bring his identification and went home to get it. Given the nature of the relief sought, I concluded that the Debtor should be present and gave Movant's counsel the option of waiting or rescheduling the hearing quickly.
(continued...)

**BACKGROUND**

The Motion is the latest in a protracted campaign by Movant to enforce its remedies with respect to a mortgage on the Property in which the Debtor[2] and Allie, inter alia, reside. The relationship commenced on or about January 11, 2002 when Markia Prout ("Prout"), Allie's daughter, executed a mortgage on the Property in favor of Movant.[3]  Exhibit M-12. Allie acknowledges that no mortgage payments have been made since 2003.  On May 27, 2003 Movant commenced a civil action against Prout in the Court of Common Pleas of Philadelphia County (the "State Court") to foreclose its mortgage.  Exhibit M-1. However, by then Prout had transferred the Property to Allie by deed dated April 28, 2003. Exhibit M-2.[4]  Accordingly Allie was joined as a defendant in the mortgage foreclosure action.  While Movant quickly sought summary judgment, the State Court concluded the motion was premature and allowed for a period of discovery.  However, on February 15,

---

(...continued)
She opted to reschedule. On May 5, the date of the continued hearing, I was advised by Allie that Debtor would not appear as they had concluded that the hearing was too stressful for him. Given Debtor's passivity in all the relevant events, his absence did not prejudice Movant.

[2] There appears to be some question whether Debtor does reside in the Property. While Allie states that Debtor does now, he apparently has not in the past.

[3] Allie does not concede the mortgage obligation, relaying a convoluted account of the closing.  As a judgment was entered by the state court, those facts are irrelevant to the matter before me. In re Knapper, 407 F.3d 573, 580 (3d Cir. 2005) (The *Rooker-Feldman* doctrine prevents federal courts, other than the Supreme Court, from exercising jurisdiction where they would be sitting as appellate courts for state court judgments.)

[4] While the deed indicates consideration of $255,000 for the transfer, Allie acknowledged that sum was the value of the Property, and no monies exchanged hands between him and his daughter.

2007 the State Court entered an order granting Movant's Motion for Sanctions for Failure to Comply with Discovery Order of September 10, 2004 and precluding Prout from introducing any evidence at trial. Exhibit M-13. A similar preclusion order was entered against Allie on June 28, 2007 for failure to comply with Court Orders dated April 5, 2007 and May 17, 2007. Exhibit M-14. After motions for reconsideration were denied, the State Court on October 2, 2007 entered summary judgment, assessing damages of $227,866.90 plus accruing interest, late charges and costs to the date of the sheriff's sale in favor of Movant and against Prout and Allie. Exhibit M-1.[5]

During the pendency of this litigation, another transfer of the Property was made. On May 27, 2007 Allie executed a deed for the Property from himself to himself and Debtor. Again consideration was recited, i.e., $155,000, but not paid. Exhibit M-3. Allie contends that given the deterioration of his relationship with Movant, he hoped that putting Debtor on the deed would provide a borrower that it would want to deal with. I find that explanation incredible since it remained and still remains Allie, not Debtor, that is controlling the situation. Rather the transfer gave purpose to a Chapter 13 petition filed on behalf of Debtor by Allie on January 8, 2008 to stay an imminent sheriff's sale of the Property. Exhibit M-4.[6] That case was dismissed on January 29, 2008 for Debtor's failure to file any of the requisite schedules and other documents.

---

[5] An earlier judgment dated August 13, 2007 was amended and vacated.

[6] When I asked Allie why he did not file the bankruptcy in his own name, he indicated that he thought he was barred based on his prior bankruptcy filing.

-3-

With another sheriff's sale then scheduled for March 4, 2008, Allie prepared another Chapter 13 petition for Debtor which he filed on March 3, 2008. According to the Court's records, that petition was filed in the District Court night box at 10:27 p.m. and notice of the filing was provided by Allie to Lorraine Doyle, Esq. of the Udren office which represents Movant by e-mail at 1:18 a.m. on March 4, 2008. Needless to say, she was not in her office to receive it. On March 4, 2008 Allie went to the sheriff's sale and presented the new petition but did not remain until the Property was called for sale. However, contrary to Allie's belief that the sheriff would not proceed based on the new petition, the Property was sold.[7] As for the bankruptcy case, it too was quickly dismissed on March 14, 2008 because of Debtor's failure to file a certificate of credit counseling.[8]

On April 4, 2008 the Motion was filed. In response, Debtor contends that the dismissal should not be vacated as the case was properly dismissed for failure to file documents. Debtor's counsel also affirmed that Debtor has no desire to prosecute a bankruptcy case. The motive of Debtor (or in reality Allie) is to pursue a pending motion in the State Court to set aside the foreclosure based on the violation of the automatic stay. Allie contends that his intention would then be to negotiate with Movant a payoff of the

---

[7] Allie contends that someone from the Udren office pointed out that the writ of execution did not have Debtor's name on it and thus the sheriff went ahead. While that may have been the reason that the sheriff did sell the Property, there is no evidence as to any communications between Movant's counsel and the sheriff.

[8] Apparently unaware of this Order, Allie filed a matrix (which lists Movant as the only creditor) along with an application to pay the fee in installments and a motion to extend time to file all other documents. These documents, like the petition, were filed by Allie after hours at the district court.

mortgage equal to the appraised value of the Property.  Movant has no interest in further negotiations.[9]

**DISCUSSION**

A. <u>Vacating the Dismissal</u>

In <u>In re Coletta</u>, 380 B.R. 140 (Bankr. E.D. Pa. 2007), my colleague Bankruptcy Judge Eric L. Frank outlined the appropriate procedural approach to a request for an annulment of the automatic stay in a case that has been dismissed.  As done here, the movant should request that the court vacate the dismissal order so that the motion to annul can be considered.  Generally the bankruptcy court has no jurisdiction to consider disputes arising post-dismissal. However, Fed. R.Bankr.P. 9024, incorporating Fed.R.Civ.P. 60(b)(6), allows the court to revisit the dismissal order and provide relief "upon such terms as are just." <u>Id.</u> at 146.  I shall do so in order to consider the motion to annul stay.

B. <u>Annulment of the Stay</u>

The discretion afforded a bankruptcy judge to grant relief from the automatic stay expressly includes the authority to grant an annulment of the stay.  11 U.S.C. § 362(d).[10]

---

[9] Having explored settlement with the parties, I observe that prior settlement discussions, which have been unsuccessful, have exhausted Movant's patience and trust of Allie. Moreover, Movant's position is that if Allie wants to pay fair value for the Property, he may do so by buying it back from Movant.

[10] Section 362(d) sets forth the grounds for relief from the stay.  It provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from
(continued...)

While actions taken in violation of the stay are void, "they may be revitalized in appropriate circumstances by retroactive annulment of the stay." In re Myers, 491 F.3d 120, 127 (3d Cir. 2007). See also In re Siciliano, 13 F.3d 748 (3d Cir. 1994).

Bankruptcy courts are recognized to have wide latitude in crafting relief from the automatic stay, but there is "less than appellate clarity" with respect to the appropriate test for retroactive relief. Meyers, 491 F.3d at 129 (*quoting* In re Fjeldsed, 293 F.2d 569, 573 (9th Cir. BAP 2003). Some cases have observed that to be granted, the remedy generally requires exceptional circumstances while others sanction a balancing of the equities on a case by case basis. However, the Meyers Court noted that "even those cases that have subscribed to a narrow conception of the power to retroactively annul the stay have affirmed that balancing the equities is the appropriate test." Id. In making this assessment, the most important factors are whether the creditor had knowledge of the debtor's bankruptcy filing or encouraged violation of the stay; whether the debtor engaged in inequitable conduct, unreasonable or dishonest behavior, such as abusive and/or repetitive bankruptcy filings; and whether the creditor would be prejudiced, including whether the expenses of beginning anew with its enforcement remedy outweigh the benefit to anyone. Id.; In re Siciliano, *on remand*, 167 B.R. 999, 1007-09 (Bankr. E.D. Pa. 1994). Given the weighing of the equities required, it follows that none of the foregoing factors are dispositive alone.

---

(...continued)
the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay [ ] for cause." 11 U.S.C. § 362(d), (d)(1).

The second and third factors overwhelmingly support the relief sought by Movant, i.e., Allie's inequitable conduct and the absence of any legitimate purpose for redoing the sheriff's sale. This filing of a Chapter 13 petition to stay a sheriff's sale of the Property for the second time was done in bad faith. It did not further any objective sanctioned by the Bankruptcy Code as Debtor's counsel implicitly acknowledged when he stated that the dismissal was correct and that Debtor is not seeking to prosecute a bankruptcy case. Most significantly, the petition was filed by Allie, a non-debtor in the name of his brother, a person he could influence and who had no interest in the Property until Allie gave him a co-ownership on the eve of the prior bankruptcy he filed for him. Debtor, who according to Allie is too disabled to appear to defend the Motion, has no creditors listed in this case other than Movant, and he is not even obligated for that debt.

This manipulation of the bankruptcy process by Allie is but a continuation of his manipulation of the State Court proceedings. When Movant filed a Complaint in foreclosure against Prout, the initial owner of the Property and Allie's daughter, Allie simply transferred the Property to himself for no consideration. This necessitated the filing of a new complaint naming Allie as an additional defendant in the State Court, the effect of which was to delay the foreclosure while no payments were being made to Movant. Indeed Allie has managed to retain the Property through litigation and other tactics for five years, the latest of which is the use of the bankruptcy stay, intended for the protection of debtors, for his own purposes.

In response to this overwhelming evidence of bad faith, Debtor relies on one fact, the notice provided to Movant's counsel after the filing and before the sale. While a relevant consideration, the presence of notice is not dispositive, especially in the presence of inequitable conduct. Having found that "[e]very court of appeals to consider the issue has held that whether the filing was in bad faith is relevant to whether the bankruptcy court should annul the automatic stay," the Third Circuit Court of Appeals found no abuse of discretion by the Myers Bankruptcy Court in holding that the debtor's dilatory behavior outweighed the creditor's unclean hands in pushing the state court to enter orders in violation of the stay. 491 F.3d at 129-30. Likewise In re Sullivan, 2006 WL 1686732, at *4 (E.D. Cal., June 20, 2006) and In re Boates, 2006 WL 166569 (E.D. Pa. January 23, 2006) represent recent cases where courts have annulled the stay although creditors had notice of the bankruptcy.

In any event, it is not clear to me whether Allie's e-mail was sufficient to put Movant on notice of the bankruptcy since Allie waited until after business hours the night before the morning sale to file the petition and then waited another few hours until the very early morning to transmit the e-mail notice to Ms. Doyle. Movant has denied being aware of this bankruptcy at the time of the sheriff's sale on March 4, 2008 but had no witness present to provide evidence on this point. However, with the sheriff sale pending for some time, the timing of Allie's actions, in combination with the other machinations he employed to insulate the Property from foreclosure, undercuts the efficacy of his notice defense.[11]

---

[11] Given Allie's actions last minute notice, Movant would not have had time to apply for emergency relief from the bankruptcy court which, under the circumstances outlined above,
(continued...)

-8-

In short, to require Movant to return to the State Court in light of this history and redo its foreclosure would be highly inequitable. The only consequence of such a requirement is delay and a further escalation of Movant's costs of collection. While I am skeptical that Debtor has any equitable interest in the Property that should have been protected by the automatic stay, the outcome of a rescheduled foreclosure would be the same given the finality of the State Court proceedings. The newly acquired interest provided to Debtor by Allie will not insulate the Property from an in rem order. At best Allie hopes to convince Movant to compromise its claim, a result not available as a matter of law. If Allie truly seeks to retain the Property by paying its fair value to Movant, he is free to do so. However, he will not hold Movant hostage by reason of a bad faith bankruptcy case.

An Order consistent with the foregoing Memorandum Opinion shall issue.

DIANE WEISS SIGMUND
United States Bankruptcy Judge

Dated: May 15, 2008

---

(...continued)
Allie had reason to believe would be granted. In re Cinole, Inc., 339 B.R. 40, 47 (Bankr. W.D. N.Y. 2006) (annulling the stay where the strategic timing of the petition before the sale precluded the creditor who knew of the filing from seeking relief from stay).

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| ARTHUR L. SPEIGHTS, | : | Bankruptcy No. 08-11543DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 15th day of May 2008, upon consideration of the Motion of Charter One Mortgage Corp. ("Movant") to Vacate Dismissal Order and to Annul the Automatic Stay (the "Motion") with Respect to Premises Located at 2036 North 63rd Street, Philadelphia, PA 19151 (the "Property"), after notice and hearing, and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED and DECREED** that:

1. The Motion is **GRANTED**;

2. The Court's Order entered on March 13, 2008 dismissing this Chapter 13 case is **VACATED** and this case is reinstated for the sole purpose of considering whether the stay should be annulled.

3. The Automatic Stay of all proceedings as provided under 11 U.S.C. § 362 is **ANNULLED** with respect to the Property retroactive to immediately prior to the Sheriff's sale of the Property on March 4, 2008.

4. The merits of the Motion having been determined, the case is again **DISMISSED**.

DIANE WEISS SIGMUND
United States Bankruptcy Judge